## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

ALEX MARKINO OLDACRE,

                    **Petitioner,**

        - Against -

PAUL ARTETA, ET AL.,

                    **Respondents.**

**26-cv-2672 (JGK)**

**Memorandum
Opinion and Order**

**JOHN G. KOELTL, District Judge:**

On March 31, 2026, the petitioner, Alex Markino Oldacre ("Oldacre"), filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the lawfulness of his detention by Immigration and Customs Enforcement ("ICE") and seeking immediate release from ICE custody. Oldacre was arrested by ICE agents after his immigration hearing on March 18, 2026. For the reasons explained below, the petition is **denied without prejudice**.

### I.

Oldacre is a native and citizen of Jamaica who unlawfully entered the United States from Mexico. ECF No. 9, Ex. A at 2–3. On August 3, 2024, he encountered a Border Patrol agent in or around San Diego and was subsequently arrested. Id. at 3. On the same date, Oldacre was released on his own recognizance, subject to the condition that he would not violate any local, state, or federal laws or ordinances. ECF No. 9-2, Ex. B. Upon his release, Oldacre was also served with a Notice to Appear ("NTA"), charging him as inadmissible under the Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i). ECF

No. 9-4, Ex. D ("NTA"). The NTA directed Oldacre to appear for a hearing before an Immigration Judge on February 12, 2025, at 290 Broadway, 15th Floor, New York, New York. Id. Oldacre later applied to adjourn his hearing to March 18, 2026, and the Immigration Judge granted that request. Paulino Decl. ¶ 15, ECF No. 10.

Oldacre began living with his fiancée, Amoy Scarlett ("Ms. Scarlett"), who is a lawful permanent resident, in September 2024. Scarlett Decl. ¶ 2, ECF No. 18. Oldacre and Ms. Scarlett obtained a marriage license but have not yet held a marriage ceremony. Id.

On August 1, 2025, Ms. Scarlett reported that she and Oldacre had a verbal argument. Id. ¶ 54. During the argument, Ms. Scarlett stated that she and Oldacre poured bleach on each other's clothes. Id. Ms. Scarlett called the police, but Oldacre left the residence before the police arrived. Id.

 The August 1, 2025, incident was the basis for Oldacre's subsequent arrest on December 16, 2025. In a criminal complaint against the petitioner, dated December 16, 2025, Detective Vicent A. Linder attested as follows:

> [O]n or about August 1, 2025, at approximately 01:10 PM at 2938 W 16 St, County of Kings, State of New York . . . the defendant did grab the informant's cell phone from the informant's hand and threw said cell phone onto the ground, causing the front and back of said cell phone to crack, and then hit the informant multiple times on the informant's head and left the above-mentioned location and then the defendant returned to the above-mentioned location a few moments later and took the informant's debit card and the informant's keys from the top of a table and poured bleach

> on the informant's clothing, causing damages to said clothing, and then the defendant did again leave above-mentioned location.
>
> The deponent is further informed by the informant that the informant is the custodian of the above-mentioned property, and that the defendant did not have permission or authority to take, use, possess, or otherwise exercise dominion or control over said property.
>
> Deponent is further informed by the informant that the above-described actions caused informant to suffer bruising to informant's face, a laceration to informant's lip, to suffer substantial pain, to fear further physical injury and to become alarmed and annoyed.

Rogers Decl., ECF No. 19-1, Ex. A.[1]

In a declaration attached to the petition, Ms. Scarlett now states, however, that Oldacre did not take anything from her. Scarlett Decl. ¶ 5. She explains that the New York City Police Department ("NYPD") report was mistaken because she told the police only that she could not find her purse at that moment, and she later found the purse after the NYPD had left. Id. Ms. Scarlett also states that she and Oldacre reconciled after the incident and have not had another fight or argument of comparable severity. Id. ¶ 6. Oldacre was not arrested after the incident on August 1, 2025.

Ms. Scarlett states that, a few months after the incident, she and Oldacre allowed Oldacre's friend, as well as the friend's girlfriend and the girlfriend's baby, to stay temporarily in Ms. Scarlett and Oldacre's home because the friend had become homeless. Id. ¶ 8.

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, omissions, emphasis, quotation marks, and citations in quoted text.

On December 16, 2025, Ms. Scarlett had an altercation with the friend's girlfriend and decided to ask the friend and his girlfriend to leave the home. Id. ¶¶ 8–9. The friend and his girlfriend were unwilling to leave and called the police. Id. ¶ 10. When the police arrived, Oldacre was arrested on an outstanding warrant for his arrest. Id. ¶ 11. Oldacre was arrested by the NYPD under the name "Alex Olcacre" on charges relating to the August 1, 2025 incident. On the same date, Oldacre was arraigned on the following charges:

| | |
|---|---|
| PL 160.10(2)(A) | ROBBERY IN THE SECOND DEGREE |
| PL 160.05 | ROBBERY IN THE THIRD DEGREE |
| PL 155.30(4) | GRAND LARCENY IN THE FOURTH DEGREE |
| PL 165.45(2) | CRIMINAL POSSESSION OF STOLEN PROPERTY IN THE FOURTH DEGREE |
| PL 120.00(1) | ASSAULT IN THE THIRD DEGREE |
| PL 145.00(1) | CRIMINAL MISCHIEF IN THE FOURTH DEGREE |
| PL 155.25 | PETIT LARCENY |
| PL 165.40 | CRIMINAL POSSESSION OF STOLEN PROPERTY IN THE FIFTH DEGREE |
| PL 110/120.00(1) | ATTEMPTED ASSAULT IN THE THIRD DEGREE |
| PL 240.26(1) | HARASSMENT IN THE SECOND DEGREE |

4

In that the defendant did: with intent to cause physical injury to another person, cause such injury to such person or to a third person; with intent to cause physical injury to another person, attempt to cause such injury to such person or to a third person; having no right to do so nor any reasonable ground to believe that the defendant had such right, intentionally damage property of another person; steal property; steal property consisting of a credit card or debit card; forcibly steal property; forcibly steal property and, in the course of the commission of the crime or of immediate flight therefrom the defendant or another participant in the crime caused physical injury to any person who was not a participant in the crime; knowingly possess stolen property with the intent to benefit the defendant or a person other than an owner thereof or to impede the recovery by an owner thereof; knowingly possess stolen property consisting of a credit card, debit card or public benefit card, with the intent to benefit the defendant or a person other than an owner thereof or to impede the recovery by an owner thereof; with intent to harass, annoy or alarm another person, strike, shove, kick or otherwise subject such other person to physical contact, or attempt or threaten to do the same.

Rogers Decl., ECF No. 19-1, Ex. A. Oldacre pleaded not guilty and was released on his own recognizance on that date. See ECF No. 9-7, Ex. G. The charges against Oldacre remain pending, and the next appearance is scheduled for June 26, 2026. Paulino Decl. ¶ 9.

On January 3, 2025, the immigration judge received an application for immigration relief from Oldacre and adjourned the matter to March 18, 2026. Paulino Decl. ¶ 15.

On March 18, 2026, Oldacre attended a routine master-calendar hearing in his asylum case at the New York City Immigration Court. Scarlett Decl. ¶ 15. Shortly after Oldacre left the courtroom, ICE agents arrested him

pursuant to a Form I-200 Warrant for Arrest of Alien. Id. ¶ 15–16; Paulino Decl. ¶ 11.

On March 31, 2026, Oldacre filed his petition for a writ of habeas corpus. See ECF No. 1. Oldacre is currently detained at the Orange County Jail. Paulino Decl. ¶ 17.

## II.

As an initial matter, the Government argues that Oldacre is properly detained pursuant to 8 U.S.C. § 1225(b)(2)(A), which requires detention of an alien "seeking admission" to the United States. Resp'ts' Mem. Opp'n to the Pet. ("Opp'n") 7–9, ECF No. 11.

As the Government concedes, that argument is foreclosed by this Court's decision in Romero Perez v. Francis, No. 25-cv-8112, 2025 WL 3110459 (S.D.N.Y. Nov. 6, 2025), its progeny, and the Court of Appeals's recent decision in Barbosa da Cunha v. Freden, No. 25-3141, 2026 WL 1146044 (2d Cir. Apr. 28, 2026). As the Court of Appeals explained, "Section 1225(b)(2)(A) applies to those noncitizens who present themselves at a port of entry for admission, or who cross the physical border into the United States but are apprehended at the 'threshold of initial entry.'" Barbosa da Cunha, 2026 WL 1146044, at *6. In this case, Oldacre was present in the United States when he was detained; he was not arrested at a port of entry or at the "threshold of initial entry." Accordingly, § 1225(b)(2)(A) does not govern Oldacre's detention.

6

## III.

The Government argues that Oldacre was properly detained under 8 U.S.C. § 1226(c)(1)(E).

Section 1226(c)(1)(E), also known as the "Laken Riley Act," is a recent amendment that requires the detention of an alien if two criteria are met. First, the alien must be inadmissible because the alien (1) is present in the United States without having been admitted or paroled, 8 U.S.C. § 1182(a)(6)(A); (2) obtained documents or admission through fraud or misrepresentation, id. § 1182(a)(6)(C); or (3) lacks valid documentation to enter the United States, id. § 1182(a)(7). Id. § 1226(c)(1)(E)(i). Second, the alien "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." Id. § 1226(c)(1)(E)(ii). If those criteria are met, the statute provides that the "Attorney General shall take into custody" that alien. Id. § 1226(c)(1).

## A.

Oldacre first argues that § 1226(c)(1)(E) does not apply because his alleged removal of Ms. Scarlett's debit card and keys did not involve the larcenous intent required under New York law. Pet'r's Reply 12–14, ECF No. 17. According to Oldacre, it is implausible that he acted with the specific intent to deprive Ms. Scarlett, permanently or temporarily, of a debit card or a

7

set of keys because he returned to their shared home the same day and re-sumed cohabiting with her afterward. Id.

That argument misses the point. Section 1226(c)(1)(E) does not require a final conviction, much less proof beyond a reasonable doubt, that the alien in fact committed larceny. Rather, the statute applies where the alien "is charged with" or "arrested for" committing acts that "constitute the essential elements of" larceny.

The Laken Riley Act provides that the term "larceny" has "the meaning[] given such term[] in the jurisdiction in which the acts occurred." 8 U.S.C. § 1226(c)(2). Because Oldacre's alleged taking of Ms. Scarlett's debit card and keys occurred in New York, the relevant statutory category of "larceny" under § 1226(c)(1)(E) is defined by New York law. New York Penal Law Article 155 defines larceny as follows:

> A person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof.

New York Penal Code § 155.05(1).

> The same article defines grand larceny in the fourth degree as follows:

> A person is guilty of grand larceny in the fourth degree when he steals property and when . . . [t]he property consists of a credit card or debit card.

New York Penal Code § 155.30(4).

> And it defines petit larceny as follows:

A person is guilty of petit larceny when he steals property.

New York Penal Code § 155.25.

Both grand larceny in the fourth degree and petit larceny fall squarely within the definition of "larceny" under New York law. Oldacre was therefore plainly charged with larceny as that term is defined under state law. Whether the State ultimately will be able to prove those charges beyond a reasonable doubt is not relevant to whether Oldacre falls within the scope of § 1226(c)(1)(E). Accordingly, § 1226(c)(1)(E) applies.[2]

### B.

Oldacre next argues that the Laken Riley Act is unconstitutional as applied to him and facially unconstitutional on procedural due process grounds. Pet'r's Reply 16–25. In particular, Oldacre contends that: (1) his interest in freedom from physical restraint is fundamental; (2) mandatory detention based merely on an arrest or charge creates an inherently unreliable risk of the erroneous deprivation of his liberty; and (3) the Government has only a negligible interest in detaining him. Id. at 16–19.

### 1.

The Due Process Clause of the Fifth Amendment forbids the Federal Government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from

---

[2] Nevertheless, as the Government conceded in oral argument, a Joseph hearing before an immigration judge would remain available for a petitioner to contest whether § 1226(c)(1)(E) properly applies to him. See Matter of Joseph, 22 I. & N. Dec. 799 (B.I.A. 1999).

government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). That protection applies to "noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." Velasco Lopez v. Decker, 978 F.3d 843, 850 (2d Cir. 2020); see also Reno v. Flores, 507 U.S. 292, 306 (1993) ("[T]he Fifth Amendment entitles aliens to due process of law in deportation proceedings.").

Although the Laken Riley Act is a recent amendment to 8 U.S.C. § 1226(c), the Supreme Court has twice addressed mandatory detention pending removal proceedings of aliens under § 1226(c).

In Demore v. Kim, the Supreme Court held that mandatory detention under § 1226(c) of a lawful permanent resident, who had been convicted of first-degree burglary and petty theft, was constitutionally permissible. 538 U.S. 510, 513 (2003). Given Congress's "broad power over naturalization and immigration" and its concern with the "wholesale failure by the INS to deal with increasing rates of criminal activity by aliens," the Court concluded that mandatory detention under § 1226(c) "necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." Id. at 518, 521, 528. The Court therefore rejected a constitutional challenge to mandatory detention of aliens for the "brief period necessary for" removal proceedings. Id. at 513.

At oral argument on this petition, Oldacre argued that <u>Demore</u> is distinguishable because its holding is limited to aliens who have been convicted of crimes and who, by virtue of the criminal process resulting in conviction, had already received greater procedural protections. However, <u>Demore</u>'s rationale does not turn exclusively on the fact that the alien had already been convicted. Although <u>Demore</u> addressed mandatory detention predicated on prior convictions, the issue in Demore was whether the alien was entitled to a hearing before the alien's detention pending removal, not whether the alien had received due process in the prior criminal proceedings that resulted in the conviction. <u>See</u> <u>id.</u> at 515. And the Court's reasoning rested more broadly on Congress's general authority to establish immigration rules and on Congress's concern that aliens identified as removable often failed to appear for removal proceedings or committed additional crimes before removal.[3] <u>See</u> <u>id.</u> at 517–530.

More than a decade later, in <u>Jennings v. Rodriguez</u>, the Supreme Court reaffirmed <u>Demore</u>'s understanding of § 1226(c). 583 U.S. 281, 303–12 (2018). The Court held that "the meaning of [§ 1226(c)] is clear": aliens detained under that provision are not entitled, as a matter of statutory interpretation, to an initial bond hearing or to periodic bond hearings after any fixed period of detention. <u>Id.</u> at 306–12. Reading such requirements into the statute—for

---

[3] In <u>Peralta-Malla v. Mullin</u>, Judge Torres reasoned that <u>Demore</u> rested on the premise of a prior conviction, because that conviction provided the petitioner with greater procedural protection than a mere arrest or charge. No. 26-cv-2903, 2026 WL 1346325, at *4–5 (S.D.N.Y. May 14, 2026). For the reasons explained above, this Court respectfully disagrees with that reading of <u>Demore</u>.

example, a bond hearing every six months—would "def[y] ordinary English usage" and lack "any arguable statutory foundation." Id. at 297, 307. At the same time, Jennings did not resolve whether the Constitution may require a bond hearing once detention becomes unreasonably prolonged. Instead, the Court left that constitutional question open for consideration on remand. Id. at 312.

In Black v. Decker, the Court of Appeals for the Second Circuit answered the constitutional question left open in Jennings. 103 F.4th 133 (2d Cir. 2024). The court held that, although § 1226(c) authorizes mandatory detention without a bond hearing in the first instance, due process requires a bond hearing when such detention becomes "unreasonably prolonged." Id. at 155.

The Court of Appeals rejected any categorical rule establishing a fixed point at which detention under § 1226(c) becomes constitutionally unreasonable. Id. at 150. Instead, the court held that whether detention has become unreasonably prolonged must be assessed under the balancing framework set out in Mathews v. Eldridge, 424 U.S. 319 (1976). Id. at 150–51. Under that framework, a court considers: "(1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id. at 151 (quoting Mathews, 424 U.S. at 335).

12

**2.**

In this case, the Laken Riley Act is likewise clear on its face. Nothing in its text requires a bond hearing, either at the outset of detention or after detention has continued for any particular period. Instead, the statute requires that "the Attorney General shall take into custody any alien who" meets the criteria for detention. 8 U.S.C. § 1226(c)(1). Accordingly, any argument that the statute itself requires a bond hearing is foreclosed by Jennings. See 583 U.S. at 306–12.

As for whether procedural due process requires an initial bond hearing, Black makes clear that it does not—"Read together, then, Demore and Jennings instruct that . . . due process does not require an initial bond determination for those detained under section 1226(c)." 103 F.4th at 142.

To the extent that Oldacre contends that his detention under the Laken Riley Act has become "unreasonably prolonged" such that he is entitled to a post-detention bond hearing under Black, the Mathews factors provide the analytical framework for evaluating that claim. See Black, 103 F.4th at 150–51; Calderon v. Noem, No. 2:25-cv-2136, 2025 WL 3754042, at *8 (W.D. Wash. Dec. 29, 2025).

The first Mathews factor weighs in Oldacre's favor. Mandatory detention implicates his "most significant" private interest: his interest in freedom from physical confinement. Velasco Lopez, 978 F.3d at 851. That interest is not diminished merely because his presence in the United States is unlawful. Black, 103 F.4th at 143; see also Zadvydas, 533 U.S. at 693 ("[T]he Due Process Clause

13

applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").

However, the relatively brief duration of Oldacre's detention reduces the weight of that interest. Under Black, due process may require a bond hearing once mandatory detention becomes unreasonably prolonged. 103 F.4th at 150–51. Although Black declined to identify a bright-line point at which detention becomes unreasonably prolonged, Oldacre's detention, currently about two months, falls well short of the periods the Court of Appeals and the Supreme Court have identified as raising serious constitutional concerns. See id. at 150 ("[A]ny immigration detention exceeding six months without a bond hearing raises serious due process concerns."); Zadvydas, 533 U.S. at 701 (recognizing a "presumptively reasonable period of detention" of six months); see also Chen v. Almodovar, No. 25-cv-9670, 2026 WL 100761, at *14 (S.D.N.Y. Jan. 14, 2026) (holding that a constitutional challenge to detention under § 1226(c) lasting less than two months was premature). Accordingly, the first Mathews factor weighs in Oldacre's favor, but not dispositively at this stage.

As to the second Mathews factor, the issue is whether Oldacre is being erroneously detained because he is not a risk of flight or a danger to the community. At this stage, however, the risk of erroneous deprivation does not weigh in Oldacre's favor. Oldacre entered the United States without a valid passport and was released on his own recognizance in August 2024. Although Ms. Scarlett appears to have recanted or qualified several of her prior statements to the police, she acknowledged that Oldacre was involved in a violent

14

domestic dispute with her during which Oldacre poured bleach on her clothing. Ms. Scarlett called the police, and Oldacre was charged with several offenses, including grand larceny in the fourth degree and petit larceny. Significantly, Oldacre has been present in the United States for less than two years.

Although the Laken Riley Act does not require a conviction before mandatory detention attaches, the particular facts of this case reduce, at least at present, the risk that Oldacre is being erroneously detained without any adequate basis. Those facts provide some support for the Government's position that Oldacre may present a danger to the community, in light of the evidence of violent altercations, and a risk of flight, in light of his relatively recent arrival in the United States. Therefore, the second Mathews factor does not favor Oldacre.

The third Mathews factor likewise does not favor Oldacre. The Government has substantial and well-established interests in "(1) ensuring the noncitizen's appearance at proceedings, and (2) protecting the community from noncitizens who have been involved in crimes that Congress has determined differentiate them from others." Black, 103 F.4th at 153. The Laken Riley Act expresses Congress's concern that aliens unlawfully present in the United States who are arrested for theft-related offenses and other specific offenses may present a danger to the community or a risk of flight.

In such circumstances, the absence of a conviction may reflect the practical difficulties in prosecution, rather than the absence of dangerous conduct. Moreover, an alien like Oldacre who faces such charges may flee before the

15

criminal case reaches a final disposition, particularly where, as here, he has only a short history and limited roots in the United States. Accordingly, the lack of a prior conviction does not substantially diminish the risk of flight or the danger that Congress concluded such individuals may pose to the community.

In sum, at this time, Oldacre has failed to show that his detention under § 1226(c)(1)(E) violates procedural due process under the Mathews balancing test.

**3.**

Oldacre finally argues that the Laken Riley Act is facially unconstitutional on procedural due process grounds. Pet'r's Reply 21–25.

"The claim in a facial challenge is that a statute is so fatally indefinite that it cannot constitutionally be applied to anyone." Copeland v. Vance, 893 F.3d 101, 110 (2d Cir. 2018). Such a challenge is "the most difficult challenge to mount successfully" because, as a general matter, "the challenger must establish that no set of circumstances exists under which the Act would be valid." United States v. Salerno, 481 U.S. 739, 745 (1987). Accordingly, "[i]f a court concludes that a statute was constitutionally applied to a facial challenger, then it generally need not consider the statute's applicability in other situations." Copeland, 893 F.3d at 111; see also Diaz v. Paterson, 547 F.3d 88, 101 (2d Cir. 2008) ("Because plaintiffs have failed to plead facts establishing that

16

Article 65 is unconstitutional as applied to them, they necessarily fail to state a facial challenge . . . .").

Facial challenges are therefore "disfavored." Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 450 (2008). They "often rest on speculation," run contrary to the "fundamental principle of judicial restraint" that courts should avoid unnecessary constitutional adjudication, and "threaten to short circuit the democratic process." Id. at 450–51.

In this case, because Oldacre has not shown that the Laken Riley Act violates procedural due process as applied to him, his facial challenge on procedural due process grounds necessarily fails as well.

C.

Finally, Oldacre also challenges the Laken Riley Act on substantive due process grounds both facially and as applied to him. Pet'r's Reply 25–26. However, Oldacre's substantive due process challenge is similarly without merit. The Court of Appeals for the Second Circuit has declined to entertain a substantive due process claim that merely repackages an alleged procedural due process violation as conduct sufficiently egregious to "shock the conscience." See Velez v. Levy, 401 F.3d 75, 94 (2d Cir. 2005). Oldacre does the same in this case. He argues that the Laken Riley Act's deprivation of liberty based on a mere accusation is "wholly irrational," Pet'r's Reply 25–26, but that contention simply restates his procedural due process argument that detention based on an arrest or charge, without an immediate individualized hearing, creates an impermissible risk of erroneous deprivation. Because the substantive due

17

process claim adds no distinct theory of constitutional injury, it fails for the same reasons as his procedural due process claim.[4]

## CONCLUSION

The Court has considered all of the parties' arguments. To the extent not addressed specifically, those arguments are either moot or without merit.

For the foregoing reasons, the petition is **denied without prejudice**.

**SO ORDERED.**

Dated:    New York, New York
         May 19, 2026

_____
John G. Koeltl
United States District Judge

---

[4] In any event, Oldacre's substantive due process claim is without merit. See Doherty v. Thornburgh, 943 F.2d 204, 211 (2d Cir. 1991) (holding that pre-deportation immigration detention, even if prolonged, did not violate substantive due process "because the infringement upon [the petitioner's] liberty results from a proper exercise of [the Government's] discretion").

18